## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## BEAUFORT DIVISION

| | | |
|---|---|---|
| ALICIA HOLLAND, | ) | |
| | ) | |
| Plaintiff, | ) | No. 9:20-cv-03479-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| BEAUFORT COUNTY, and JAMES | ) | |
| BECKERT, *individually and in his* | ) | |
| *official capacity*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on Magistrate Judge Molly H. Cherry's report and recommendation ("R&R"), ECF No. 135, on resolution of two motions for summary judgment. ECF Nos. 114; 115. Namely, the magistrate judge recommended that the court grant defendant James Beckert's ("Beckert") motion for summary judgment, ECF No. 114, and grant defendant Beaufort County's (the "County") motion for summary judgment, ECF No. 115, as to plaintiff Alicia Holland's ("Holland") federal claims. The magistrate judge further recommended that the court thereafter decline to exercise jurisdiction over the remaining state law claims and remand the case to state court. For the reasons set forth below, the court adopts the R&R and grants the motions as to Holland's federal claims. The court thereafter declines to exercise jurisdiction over the remaining state law claims and remands the matter to state court for further proceedings.

## I.  BACKGROUND

The R&R ably recites the facts of the case, and the parties do not object to the R&R's recitation thereof. Therefore, the court will only briefly summarize material facts

as they appear in the R&R for the purpose of aiding an understanding of the court's legal analysis.[1]

This dispute arises from alleged harassment and unwelcome workplace conduct by the elected Beaufort County Auditor, Beckert, against Beaufort County employees. Holland had worked for the County since 2010 and rose to the position of Chief Financial Officer ("CFO") in 2013, which she held until her resignation on April 20, 2020. The CFO is responsible for the general ledger and for reviewing the County's financial documents and the data provided by each department to calculate rates and analyze revenue, for calculating the County's millage rates from data provided by the County's Auditor, Treasurer, and Accessor, and for developing the County's Budget. As CFO, Holland reported to the County Administrator.

Beckert was elected Beaufort County Auditor in 2014 and took office in 2015. He was re-elected in 2018, and he remained in that position until July 1, 2023. Based on the accounts of Holland and other County employees, it is readily apparent that Beckert was disagreeable, incompetent, and difficult in the workplace. Beckert was an equal opportunity pain in the tuchus. County employees, both male and female, complained to Human Resources, and at least one complained to the local police about Beckert's conduct. Beckert allegedly would make baseless accusations and would often be rude and demeaning. Multiple people testified that Beckert would often stare at them—sometimes he would stand outside of their offices and stare through their windows. Others reported that he would loom over them in the conference rooms during one-on-

---

[1] The court dispenses with citations throughout and notes that unless the court states otherwise or cites to another source, the facts are gleaned from the amended complaint, ECF No. 28, and the R&R.

one meetings.  In terms of incompetence, Beckert reportedly challenged other employees and refused to follow what County Council asked him to do.  Clearly, Beckert was a difficult coworker, and his worst workplace relationships were with other persons in positions of authority.

The County took several actions in response to Beckert's antipathy and general hostility.  In 2016, Deputy County Attorney Thomas Keaveny ("Keaveny") and County Administrator Gary Kubic ("Kubic") contacted the South Carolina Department of Revenue to request guidance regarding issues related to the duties of the elected County Auditor and County Treasurer.  ECF No. 115-4.  In 2018, Assistant County Attorney Christopher Inglese ("Inglese") contacted the South Carolina Attorney General on behalf of County Council regarding a possible referendum for the November 2018 general ballot to ask voters if they would like to change the County's form of government to the council-management form of government, which would permit the County Council to change the Auditor's elected position to an appointed position.  ECF No. 115-4 at 27–28.

Bearing in mind the foregoing, the court sets forth Holland's interactions and relationship with Beckert.  Holland, as the County's CFO, had a position of authority. Holland alleges that Beckert did not understand "basic tax and mathematics principles" and made her job exponentially more difficult "by attempting to audit her work at every turn."  ECF No. 28, Amend. Compl. ¶ 15 & n.3.  For example, Beckert wrote letters to the County's external auditors in which he asserted that the Comprehensive Annual Financial Reports contained material misrepresentations and violated South Carolina

3

law.[2]  As another example, Beckert decided, "without proficiency in tax or mathematics, to calculate the value of a mil[3] [sic] and forward his calculations to the County's Public Service Districts," but he incorrectly calculated the mill such that the end result contradicted Holland's calculations, which purportedly caused "a mass state of confusion."  Amend. Compl. ¶ 22 (footnote added).  In addition to his attempts to audit Holland's work, Beckert would shout at her from across a parking lot to try to talk to her, block her exit from meeting rooms to try to force her to talk to him, and get up at County Council meetings, school district meetings, and financial committee meetings to say that there was fraud and illegal activity, and that Holland's work and calculations were incorrect.  Holland complained to Councilman Paul Sommerville ("Sommerville") about Beckert's job performance and harassment.  Ultimately, Holland resigned on April 20, 2020, and attributed Beckert's harassment and hostility to have caused the stress and medical issues which prompted her resignation.[4]

On September 8, 2020, Holland filed a complaint in the Beaufort County Court of Common Pleas. ECF No. 1-2, Compl.  On September 30, 2020, Beckert removed the action to this federal district court pursuant to 28 U.S.C. §§ 1441, 1331, 1343.  ECF No. 1.  Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C), all pretrial proceedings in this case were referred to Magistrate Judge Cherry.

---

[2] The letters explicitly reference Treasurer Maria Walls and do not mention Holland, though Holland still found them to implicate her work because she was the person responsible for signing the Reports and maintaining the County's general ledger.
[3] A mill is the rate of tax used to calculate local property taxes in South Carolina.
[4] The court does not consider the actions that the County undertook to limit Beckert's harassment after April 20, 2020.

On January 19, 2021, Holland filed an amended complaint, now the operative complaint, against all defendants which asserts eight causes of action.[5]  Amend. Compl.

On May 1, 2023, Beckert filed a motion for summary judgment, ECF No. 114, and the County also filed a motion for summary judgment that same day, ECF No. 115. Holland filed responses in opposition to both motions on June 2, 2023.  ECF Nos. 120; 121.[6]  Beckert and the County replied to Holland's respective responses in opposition to

---

[5] The amended complaint sets forth the eight causes of action in turn: (1) discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 2000e et seq., Amend. Compl. ¶¶ 45–56; (2) violation of equal protection under the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983, id. ¶¶ 57–63; (3) negligence, id. ¶¶ 64–73; (4) assumption of a duty, id. ¶¶ 74–83; (5) outrage, id. ¶¶ 84–88; (6) assault, id. ¶¶ 89–91; (7) defamation, id. ¶¶ 92–100; and (8) violation of equal protection as guaranteed by the Fourteen Amendment to the United States Constitution in violation of 42 U.S.C. § 1983, id. ¶¶ 101–04.  Holland asserts the first four causes of action against Beaufort County and asserts the remaining four causes of action against Beckert.  Id. ¶¶ 45–104.  Holland withdrew the assault cause of action in her response in opposition to the underlying motion for summary judgment.  ECF Nos. 120 at 32; 121 at 24.

[6] The court notes that the parties each cite to deposition testimony, often citing to deposition testimony as an attachment to their respective briefs.  Consequently, the same testimony in two different briefs may have two different citations to deposition transcripts which are attached to the parties' respective briefs.  See, e.g., ECF Nos. 120-12, Cadd Dep.; 138-1, Cadd Dep.  The court observes that the most complete deposition transcripts are attached to the motions for summary judgment, ECF Nos. 115; 116, and the responses in opposition to the motions, ECF Nos. 120; 121.  The parties later cite to excerpts from those deposition transcripts which they include as attachments to their later-filed objection briefs and responses.  See, e.g., ECF Nos. 120-12, Cadd Dep.; 138-1, Cadd Dep.  The court specifies as much to account for and explain the discrepancies in the deposition citations throughout.  For the sake of completeness, the court provides the citations to each of the depositions cited in this order and details that person's relevance to this lawsuit:
- Plaintiff Alicia Holland's depositions ("Holland Dep."), ECF Nos. 114-3; 114-4; 114-18; 114-21; 114-22; 114-23; 114-24; 114-25; 114-26; 114-27; 115-2; 120-11; 121-11; 126-2; 126-4; 126-5; 126-28; 126-33; 138-2;
- Former County Administrator Gary Kubic ("Kubic Dep."), ECF Nos. 114-8; 114-9; 114-10; 115-8; 120-6; 121-6; 126-12; 126-13; 126-14; 126-21;
- Former County Administrator Ashley Jacobs ("Jacobs Dep."), ECF Nos. 114-5; 114-7; 114-17; 120-4; 121-4; 138-4;

each defendant's respective motion on June 16, 2023. ECF Nos. 124; 126. On October 11, 2023, Magistrate Judge Cherry issued a report and recommendation which recommended that Beckert and the County's motions be granted as to all federal claims and further recommended that the court decline to exercise jurisdiction over the remaining state law claims and remand for further proceedings. ECF No. 135, R&R. On November 24, 2023, Holland objected to the R&R, ECF No. 138, to which both Beckert and the County responded on December 8, 2023, ECF Nos. 141; 142. As such, this motion has been fully briefed and is ripe for review.

## II.  STANDARD

### A.  Order on R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423

---

- Current County Administrator Eric Greenway ("Greenway Dep."), ECF Nos. 114-12; 114-13; 120-5; 126-30; 126-31;
- Former County Deputy Auditor David Cadd ("Cadd Dep."), ECF Nos. 114-14; 114-15; 114-16; 120-12; 121-12; 126-1; 126-3; 126-32; 126-34; 138-1;
- Deputy County Attorney Thomas Keaveny ("Keaveny Dep."), ECF Nos. 114-11; 115-3; 120-7; 126-19; 126-20;
- County Assessor Ebony Sanders ("Sanders Dep."), ECF Nos. 114-6; 115-10; 120-9; 121-9;
- County Head of Human Resources Suzanne Gregory ("Gregory Dep."), ECF Nos. 115-9; 120-15; 126-6; 126-7; 126-8; 126-9; 126-10; 126-11;
- County Councilmember Paul Sommerville ("Sommerville Dep."), ECF Nos. 115-5; 120-8; 121-8; 138-3.

U.S. 261, 270–71 (1976).  The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).  The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made.  Id.

However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).  Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings."  Greene v. Quest Diagnostics Clinical Lab'ys, Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted).  When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with."  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted).  Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing the court's attention to a specific error in a magistrate judge's proposed findings.  Id.

### B.  Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In so doing, the court must view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.  DISCUSSION

The R&R first considered Holland's claim of a hostile work environment based on sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 2000e et seq., before considering the § 1983 claims she brings against the County and Beckert. R&R at 16–33. Ultimately, the magistrate judge recommended that the court find there are no genuine issues of material fact as to any of the federal claims and further recommended that the court grant summary judgment for the defendants on all federal claims. Id. Since the magistrate judge found that no reasonable jury could find a constitutional violation, she further recommended that the court find Beckert entitled to qualified immunity. Id. at 32–33. The magistrate judge thereafter recommended that the court decline to exercise jurisdiction on the pendent state law claims and remand the case to state court. Id. at 33–34. Because both of Holland's equal protection claims—and Beckert's entitlement to qualified immunity—are based on many of the same issued governing her Title VII claim, the R&R primarily focused on whether

Holland established a genuine issue of material fact with respect to her Title VII claim.
See id. at 16–29.

The R&R noted that to survive summary judgment on her Title VII hostile work
environment claim, Holland must show that a reasonable jury could find (1) unwelcome
conduct; (2) that is based on her sex; (3) which is sufficiently severe or pervasive to alter
the conditions of her employment and to create an abusive work environment; and (4)
which is imputable to the employer.  Id. at 17 (citing Boyer-Liberto v. Fontainebleau
Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc)).  The parties do not dispute that
Holland had created a jury question as to the first element and the magistrate judge
concluded that Holland had also created a jury question as to the third element and no
party objects to that conclusion.  Id. at 17, 22–25.  However, Magistrate Judge Cherry
recommended that the court grant summary judgment because Holland failed to establish
a jury question as to the second element.  Id. at 17–22.  The R&R determined there was
insufficient evidence for a reasonable jury to conclude that Beckert's harassment was
based on Holland's sex, since Beckert treated male employees similarly.  Id.
Additionally, the magistrate judge recommended that the court find that the fourth
element was not met and that Beckert's conduct could not be imputed to the County
because statutory law prohibits the county government from enforcing its personnel
policies and procedures against elected officials.  Id. at 25–29 (first citing S.C. Code Ann.
§ 4-9-30(7); and then citing Eargle v. Horry Cnty., 545 S.E.2d 276 (S.C. 2001)).
Moreover, the R&R noted that Holland's suggested corrective actions would not have
meaningfully changed her limited in-person interactions with Beckert, which further

weighed in favor of finding no genuine dispute of material fact as to the fourth element.
Id.

Upon finding that Holland had not created a jury question as to her Title VII
claim, the R&R explained that where a court concludes that a plaintiff's Title VII claim is
subject to summary judgment, the equal protection claim premised on that same
harassment must also fail. Id. at 31 (first citing Brown v. Bratton, 2022 WL 17336572, at
*11 (4th Cir. Nov. 30, 2022); and then citing Beardsley v. Webb, 30 F.3d 524, 529 (4th
Cir. 1994)). Finally, the magistrate judge noted that since Holland had not established an
equal protection claim against Beckert or established a constitutional violation by him,
Beckert was entitled to qualified immunity. Id. at 32–33 (concluding that Holland did not
create a jury question as to whether Beckert violated a statutory or constitutional right,
thus failing to meet the first requirement to overcome qualified immunity). Finally, the
magistrate judge noted that the balance of factors which the court must analyze to
determine whether to exercise supplemental jurisdiction weighed in favor of remand,
particularly because all federal claims were eliminated prior to trial. Id. at 33–34.

Holland objects to the R&R's conclusions as to her federal claims and the R&R's
conclusion as to Beckert's entitlement to qualified immunity. ECF No. 138. Holland did
not challenge the magistrate judge's recommendation that the court remand the case
should it find no genuine issue of material fact as to any of the federal claims. See id.
Holland also did not challenge the magistrate judge's recommendation that the court find
Holland had created a genuine issue of material fact as to the third element of her Title
VII claim. See id.

In response, the County argues that Holland disregards the R&R's thoughtful consideration of the South Carolina Home Rule Act as well as precedent considering the same as it applies to Beaufort County's council-administrator form of government. ECF No. 141 at 1. The County agrees with the R&R's recommendation that Holland has failed to establish a genuine issue of material fact that the unwelcome conduct was based on her sex or that Beckert's conduct was imputable to the County. Id. at 1–3. Also in reply, Beckert first notes that Holland merely reiterates her arguments she raised in her response in opposition to the motion for summary judgment, and therefore her objection should be treated as a failure to object. ECF No. 142 at 2. Beckert then emphasizes that the magistrate judge reached the correct conclusion as to both the federal claims and his entitlement to qualified immunity. Id.

No party objects to the R&R's recommendation that the court find that Holland created a genuine issue of material fact as to the first and third elements of her Title VII claim, and in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond, 416 F.3d at 315. A review of the record for clear error indicates that the R&R accurately summarized this case and the applicable law. Accordingly, the court turns to the R&R's recommendations to which the parties object. In concrete terms, the court will review de novo the magistrate judge's conclusions regarding the second and fourth elements of Holland's Title VII claim and the magistrate judge's subsequent conclusions as to Holland's equal protection claims and Beckert's entitlement to qualified immunity.

### A.  Title VII

An employer violates the substantive discrimination provision of Title VII when it subjects an employee to a hostile work environment.  Laurent-Workman v. Wormuth, 54 F.4th 201, 210 (4th Cir. 2022) (citing Boyer-Liberto, 786 F.3d at 276–77).  The elements of a Title VII claim for hostile work environment are: "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected status]; (3) which is sufficiently severe or pervasive to alter her conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer."  Strothers v. City of Laurel, 895 F.3d 317, 328 (4th Cir. 2018) (alteration in original) (internal quotation marks omitted) (quoting Okoli v. City of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011)).  As the court previously noted, the parties agree the first element is met.  ECF No. 115 at 9.  Additionally, the court finds that Holland has created a jury question as to the third element.  See R&R at 22–25. Thus, the court must review and determine, de novo, whether Holland has created a genuine issue of material fact as to the second and fourth elements of a Title VII claim for hostile work environment.

### 1.  Second Element—Unwelcome Conduct Based on Her Sex

"An employee is harassed or otherwise discriminated against 'because of' his or her gender if, 'but for' the employee's gender, he or she would not have been the victim of the discrimination."  Smith v. First Union Nat'l Bank, 202 F.3d 234, 242 (4th Cir. 2000).  A plaintiff "may prove sex-based discrimination in the workplace even though she is not subjected to sexual advances or propositions."  Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc) (citing Smith, 202 F.3d at 242–43). Consequently, a trier of fact may reasonably find discrimination when "a female victim is

12

harassed in such sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). Courts "determine whether conduct is because of sex by looking to the behavior, considering the underlying circumstances and the setting in which it occurred, and determining whether 'members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" Webster v. Chesterfield Cnty. Sch. Bd., 38 F.4th 404, 413 (4th Cir. 2022) (quoting Oncale, 523 U.S. at 80).

The Fourth Circuit has identified that "the critical inquiry is whether the plaintiff's environment was hostile or abusive 'because of' her sex." Hoyle v. Freightliner, LLC, 650 F.3d 321, 332 (4th Cir. 2011) (emphasis in original). In other words, a plaintiff may prove sex-based discrimination in the workplace, in violation of Title VII, even though she is not subjected to sexual advances or propositions. See id. at 331–32. Rather, a trier of fact may reasonably find sex discrimination violative of Title VII when a female victim is harassed in such sex-specific and derogatory terms as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. See id.

The court first considers the parties' respective arguments as to the second element, before turning to the magistrate judge's recommendation and Holland's objections to that recommendation. The court ultimately finds that there is not a genuine issue of material fact as to whether Beckert's unwelcome conduct was based on gender.

In its motion for summary judgment, the County argued that Holland failed to prove that Beckert's unwelcome conduct was because she was female. ECF No. 115 at 9.

13

Rather, it contended that, according to Holland's testimony, Beckert's comments were made with respect to her job responsibilities within the government.  Id. at 9–10 (citing ECF Nos. 28; 28-1; 28-18; 115-1, Holland Dep. at 8:12–15).  The County emphasized that other testimony from Kubic, a fellow County employee, further supported the interpretation that Beckert's comments were not made because of her sex.  Id. at 10–11 (quoting ECF No. 115-7, Kubic Dep. at 39:6–40:19).  The County further contended that Beckert "raised his political agendas with males and females" alike.  Id. at 11–14 (quoting ECF Nos. 115-8, Gregory Dep. at 33:13–34:4; 115-9, Sanders Dep. at 11:5–17; Kubic Dep. at 20:7–21:11, 115:20–116:2; 115-2, Keaveny Dep. at 21:23–22:14).  Thus, the County argued that the court should find that Holland has not established a genuine issue of material fact as to the second element, meaning that a reasonable jury could not conclude that Beckert's harassment was because of Holland's gender.  Id. at 14.

In her response in opposition, Holland argued that "there [wa]s ample evidence that the discrimination was based on sex."  ECF No. 120 at 11.  To make this argument, Holland pointed to Deputy Auditor David Cadd's ("Cadd") testimony that Beckert had problems with women in authority, ECF No. 120-12, Cadd Dep. at 49:21–50:1; to her own testimony that he harassed women but not men, ECF No. 120-11, Holland Dep. at 134:10–135:1; and to Council Administrator Jacobs's testimony that Beckert harassed a group of women in positions of authority, ECF No. 120-4, Jacobs Dep. at 76:10–79:1, 126:24–127:10, 189:15–190:5.  ECF No. 120 at 11–14.  Holland thereafter asserted that she met her burden because she only needed to provide enough evidence to support an inference of discrimination, which she may do by rebutting Beckert's explanation for the

14

action.[7]  Id. at 14–15 (first citing Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S.

133, 148 (2000); then citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); then

citing Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 648 (4th Cir. 2002);

and then citing Crosland v. Caldera, 232 F.3d 887 (4th Cir. 2000) (unpublished table

decision) (per curiam))[8].  In sum, Holland concluded that she created a jury question as to

whether Beckert's discrimination was based on her sex.  Id. at 15.

    The magistrate judge disagreed.  R&R at 22.  She concluded that Holland had not

identified any evidence of behavior by Beckert that clearly indicated that his harassment

of the County employees was motivated by hostility towards women.  Id.  Moreover, the

magistrate judge noted that the hostility and harassment was directed at both men and

women, and that women like Holland were not exposed to disadvantageous terms or

conditions of employment that men were not exposed to.  Id.  Rather, the magistrate

judge indicated that the evidence shows that a reasonable jury could not find that

---

    [7] This burden shifting framework identified in Reeves and St. Mary's Honor Center is better known as the McDonnell Douglas framework.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), holding modified by Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993).  The McDonnell Douglas framework was initially developed for Title VII discrimination cases.  See id.  The framework does not apply to an employee's Title VII claim for hostile work environment where the employee presents direct evidence of harassment based on a protected characteristic.  See Stewart v. MTR Gaming Grp., Inc., 581 F. App'x 245, 248 (4th Cir. 2014).  Since Holland did not apply the framework to the facts of this case, the court need not consider the applicability of the framework.  See ECF No. 121 at 15–16.

    [8] The court notes that each of these cases dealt with unlawful discrimination under Title VII, which is a distinct cause of action from a claim of hostile work environment brought pursuant to Title VII.  See Reeves, 530 U.S. at 148 (alleging discrimination based on a protected characteristic in employer's termination decision); St. Mary's Honor Ctr., 509 U.S. at 502 (alleging discrimination based on a protected characteristic in employer's demotion and termination decision); Dennis, 290 F.3d at 648 (alleging discrimination based on a protected characteristic in employer's promotion decision); Crosland, 232 F.3d 887 (alleging discrimination based on protected characteristic in employer's termination decision).

Beckert's hostility was due to gender animus rather than the kind of personality conflict common in workplaces.  Id.

Holland objects to this recommendation.  ECF No. 138 at 2–4.  While she admits that "Beckert is a problem for both males and females," she contends that "his treatment of females is disproportionately worse than his treatment of males."  Id. at 2–3.  To make that argument, she quotes from the same depositions that she quoted from in her response in opposition.  See id. at 3–4 (first quoting ECF No. 138-1, Cadd. Dep. at 49:21–50:1; then quoting ECF No. 138-4, Jacobs Dep. at 126:24–127:10, 189:15–190:5; and then quoting ECF No. 138-2, Holland Dep. at 134:10–135:1); ECF No. 120 at 11–15 (first quoting ECF No. 120-12, Cadd Dep. at 49:21–50:1; then quoting ECF No. 120-11, Holland Dep. at 134:10–135:1; and then quoting ECF No. 120-4, Jacobs Dep. at 76:10– 79:1, 126:24–127:10, 189:15–190:5).  In other words, Holland does not identify any new evidence in her objection.  See ECF Nos. 138 at 2–4; 120 at 11–15.  In fact, she reiterates the same arguments she provided in her response to disagree with the magistrate judge's conclusion and to illustrate that there is sufficient evidence to create a jury question as to whether Beckert's harassment was based on her gender.[9]  See ECF Nos. 138 at 2–4; 120

_____

[9] Holland's identical reiteration of her previous arguments raised in her response in opposition brief does not qualify as a specific and particularized objection in accordance with Fed. R. Civ. P. 72.  See United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007).  "General objections that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72, and have the same effect as a failure to object, or as a waiver of such objection."  Moon v. BWX Techs., Inc., 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012).  A plaintiff who reiterates her previously raised arguments will not be given "the second bite at the apple she seeks;" to permit otherwise would duplicate time and effort and waste judicial resources rather than save them.  Veney v. Astrue, 539 F. Supp. 2d 841, 846 (W.D. Va. 2008).  In the absence of a timely filed, specific objection, the court reviews the R&R only for clear error.  Diamond, 416 F.3d at 315; Orpiano, 687 F.2d at 47.  A review of the record for clear error indicates that the R&R accurately summarized this case and the

16

at 11–15.  Generously construed, Holland specifically objects to the R&R by, first, claiming that it failed to properly weigh the testimony from non-interested witnesses Jacobs and Cadd and, second, arguing that it placed undue weight on Holland's testimony where she admitted she did not know of any time Beckert made any comments related to her gender.  ECF No. 138 at 4 (citing R&R at 21).  The court confines its <u>de novo</u> review of Holland's objections to these two arguments.  <u>See</u> Fed. R. Civ. P. 72.

The court agrees with the magistrate judge and finds that Holland has not created a jury question on the second element.  A review of the numerous briefs and attached depositions in this case indicate that Beckert had problems with male and female authority figures alike.  <u>See, e.g.</u>, ECF Nos. 115-8, Gregory Dep. at 33:13–34:4; 115-9, Sanders Dep. at 11:5–17; Kubic Dep. at 20:7–21:11, 115:20–116:2; 115-2, Keaveny Dep. at 21:23–22:14.  Holland herself concedes that Beckert also had problems with male employees, though she contends that he treated female employees disproportionately worse.  ECF No. 138 at 3.  The evidence before the court does not support that statement; rather, it tends to show that Beckert was abusive towards males and females alike.  <u>See</u> ECF No. 120-7, Keaveny Dep. at 22:15–25 (explaining that Beckert was abusive towards Holland (female), Treasurer Maria Walls (female), Kubic (male), County Assessor Ebony Sanders (female), Inglese (male), and former interim County Administrator John Weaver (male)).  Suzanne Gregory, the County's Human Resources Director, testified that both men and women complained that Beckert was rude to them.  ECF No. 120-15 at 33:13–34:4.  For example, Kubic (male) reported Beckert's behavior—staring through his office

---

applicable law as it relates to Holland's claim that Beckert disproportionately targeted female employees.

window—multiple times to the sheriff.  ECF No. 120-6, Kubic Dep. at 14:19–15:3,

16:23–17:9.  Kubic also testified that Treasurer Maria Walls similarly felt that Beckert

was staring at her through her office window, and Kubic advised her to report it to the

sheriff.  Id. at 15:4–11.  To reiterate, the court is tasked with "determining whether

'members of one sex are exposed to disadvantageous terms or conditions of employment

to which members of the other sex are not exposed.'"  Webster, 38 F.4th at 413 (quoting

Oncale, 523 U.S. at 80).  The evidence before the court indicates that Beckert harassed

and abused both men and women employees, but there is insufficient evidence to

conclude that his harassment of women employees was disproportionately worse.

Additionally, Holland's own testimony indicates that she has no knowledge of Beckert

mentioning her gender in any of his criticisms of her; rather, she testified that his

criticisms stemmed from disputes about County finances and financial document.  ECF

No. 120-11 at 135:5–6 ("I don't know that he specifically mentioned my gender.");  id. at

107:19–22, 108:7–24, 140:1–11 (testifying as to the subject matter of Beckert's

harassment and explaining it all pertained to their jobs).  This further bolsters the

conclusion that Beckert's alleged harassment was not motivated by general hostility to

the presence of women in the workplace.  See Hoyle, 650 F.3d at 331–32.  As such, the

court adopts the R&R and finds that Holland has not created a jury question as to the

second element of her Title VII claim.  Consequently, the court grants summary

judgment for the County on this claim and need not consider the remaining elements of

the claim, though it does so for the sake of completeness.

## 2. Fourth Element—Imputable to the County

An employer is liable under Title VII for the actions of third parties only if the employer is negligent, such that the employer knew or should have known of the harassment and failed to take "prompt remedial action reasonably calculated to end the harassment." Freeman v. Dal-Tile Corp., 750 F.3d 413, 423 (4th Cir. 2014) (quoting Amirmokri v. Balt. Gas & Elec. Co., 60 F.3d 1126, 1131 (4th Cir. 1995)).

First, the court is tasked with evaluating whether the employer had either actual knowledge or constructive knowledge of the harassment—thus, knowledge of the harassment can be imputed to an employer if a reasonable person, intent on complying with Title VII, would have known about the harassment. See Chapman v. Oakland Living Ctr., Inc., 48 F.4th 222, 232 (4th Cir. 2022); see also Freeman, 750 F.3d at 423 ("[A]n employer cannot avoid Title VII liability for [third-party] harassment by adopting a 'see no evil, hear no evil' strategy." (second alteration in original)).  A reasonable jury could find that an employer had notice of harassment where the victim complained to a person employed by her employer—whatever position that person might have[10]—such that a reasonable jury could find that the employer knew or should have known about the harassment as a result of the plaintiff's report of that incident.  Chapman, 48 F.4th at 232–33 (citing E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 319 (4th Cir. 2008)). "[A]n employer may be charged with constructive knowledge of [third-party] harassment

---

[10] In Chapman, the Fourth Circuit noted that "the relevant question is not whether [that employee] qualifies as a 'supervisor' under Vance[ v. Ball State Univ., 570 U.S. 421 (2013)].  Rather, the proper question is whether [that employee's] position at [the employer]—whatever it is labelled—would allow a reasonable jury to find that [the employer] knew or should have known of the [unwelcome conduct] as a result of [the plaintiff's] report of that incident to [that employee]."  48 F.4th at 233.

when it fails to provide reasonable procedures for victims to register complaints."

Ocheltree, 335 F.3d at 334.  However, "'an employer cannot be expected to correct

harassment unless the employee makes a concerted effort to inform the employer that a

problem exists' under its reasonable procedures."  E.E.O.C. v. Xerxes Corp., 639 F.3d

658, 674 (4th Cir. 2011) (quoting Howard v. Winter, 446 F.3d 559, 567 (4th Cir.

2006)).[11]

Second, the court evaluates whether the employer failed to take "prompt remedial

action reasonably calculated to end the harassment," Freeman, 750 F.3d at 423, by

evaluating whether the employer took "steps reasonably likely to stop the harassment,"

Chapman, 48 F.4th at 233 (quoting Xerxes Corp., 639 F.3d at 674).  "[I]t is possible that

an action that proves to be ineffective in stopping the harassment may nevertheless be

found reasonably calculated to prevent future harassment and therefore adequate as a

matter of law."  Xerxes Corp., 639 F.3d at 670 (alteration and internal quotation marks

omitted).  In other words, "[w]hile employers can and should be required to adopt

reasonable policies aimed at preventing illegal conduct and to take reasonable measures

to enforce these policies, they cannot be held to a standard under which they are liable for

any and all inappropriate conduct of their employees."  Xerxes Corp., 639 F.3d at 675.

"So long as the employer's response to each known incident of [third-party] harassment

is reasonably prompt, and the employer takes remedial measures that are reasonably

calculated to end the harassment, liability may not be imputed to the employer as a matter

---

[11] The Fourth Circuit adopted the "negligence standard" for harassment of an employee by a co-worker in Xerxes Corp., and later adopted that same standard in third-party harassment cases.  See Freeman, 750 F.3d at 416, 422–23.  Thus, Xerxes Corp. and its co-worker harassment progeny remain relevant to the analysis of third-party harassment in the instant case.

of law." Id.  In assessing remedial actions, the court must consider, inter alia, "the promptness of the employer's investigation when complaints are made, whether offending employees were counseled or disciplined for their actions, and whether the employer's response was actually effective" in stopping the conduct of which plaintiff complains.  Id. at 669; see also Pryor v. United Air Lines, Inc., 791 F.3d 488, 498 (4th Cir. 2015).

### a. Actual or Constructive Notice of Harassment

Neither party claims that the County did not have actual or constructive knowledge that Beckert harassed employees.  In fact, the County's motion for summary judgment was almost entirely focused on the question of corrective measures for this element, thereby implicitly agreeing that the County had actual notice or at least constructive notice of Beckert's harassment of employees in general by focusing on the question of corrective measures.  See ECF No. 115 at 18 ("Beaufort County attempted to take all corrective measures within its control considering the state statutory limitations.").  In her response, Holland provides a footnote where Beaufort County Councilman Paul Sommerville testified that he had notice from multiple County employees of Beckert's harassment and abusive conduct.  ECF No. 120 at n.4 (citing ECF No. 120-9, Sanders Dep. at 21:8–13).  Similarly, in her objection to the R&R, Holland contends that the County "knew of the harassment and failed to take effective action to stop it."  ECF No. 138 at 5–6 (first referencing ECF No. 138-3, Sommerville Dep. at 13:10–13 (defining "the Beckert Problem"); and then referencing ECF No. 138-4, Jacobs Dep. at 126:24–127:10; 189:15–190:5 (defining "the Beckert Problem")).  Thus, the County had notice that Beckert was generally harassing employees.

However, it is unclear from the briefs whether the County had actual or

constructive knowledge of Beckert's harassment of <u>Holland</u> prior to her resignation.[12]

_____

[12] The court notes that the parties' failure to address notice to the County is ultimately harmless because of Holland's clear failure to establish that Beckert's actions were imputable to the County. However, the court provides additional information as to that required notice for the sake of completeness.

    From the briefs, it is unclear whether the County was on actual notice that Beckert was harassing Holland, much less <u>when</u> the County was put on actual notice. The parties and the magistrate judge focus on Beckert's harassment of other employees, who filed formal complaints and lawsuits against the County for Beckert's actions. <u>See, e.g.</u>, ECF No. 115 at 2 (setting forth Holland's allegation that the County failed to provide a safe and non-hostile work environment for its employees "despite longstanding knowledge and recognition that Beckert systematically, for years, harassed and intimidated County employees, including Holland."). Holland resigned on April 20, 2020, but did not email Sommerville to explain the rationale behind her resignation until August 7, 2020. <u>See</u> ECF No. 28-1. Thus, the County clearly had actual notice of Beckert's harassment of Holland in August 2020 at the latest. <u>See id.</u> But the parties have not identified whether the County had notice prior to that email, much less when it had notice. <u>See id.</u> "The responsibility to comb through the record in search of facts relevant to summary judgment falls on the parties—not the court." <u>Carlson v. Bos. Sci. Corp.</u>, 856 F.3d 320, 325 (4th Cir. 2017); <u>Walker v. Prince George's Cnty.</u>, 575 F.3d 426, 429 n.* (4th Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs"); <u>Cray Commc'ns, Inc. v. Novatel Comput. Sys., Inc.</u>, 33 F.3d 390, 395–96 (4th Cir. 1994) (noting that the district court is "well within its discretion in refusing to ferret out the facts that counsel ha[s] not bothered to excavate"); <u>see also</u> <u>Williams v. Horry-Georgetown Tech. Coll.</u>, 26 F. Supp. 3d 519, 540 n.8 (D.S.C. 2014) (explaining that it is the plaintiff's responsibility—not the court's responsibility—to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion). As such, Holland bears the burden of demonstrating a jury question exists as to that element in response to the County's motion for summary judgment on her Title VII claim. That burden includes identifying a genuine issue of material fact that the County was on actual notice of Beckert's harassment of her. If Holland cannot establish that the County had actual notice of Beckert's harassment of her, she alternatively could show constructive notice. Constructive notice may be shown if an employer fails to provide reasonable procedures for victims of harassment to register complaints. <u>See Ocheltree</u>, 335 F.3d at 334. The court notes that the parties' failure to address this prong impacts the subsequent analysis of reasonable remedial measures, because that inquiry requires the court to analyze whether the employer took prompt and adequate remedial action after notice of the harassment. <u>See Amirmokri</u>, 60 F.3d at 1130. If the parties fail to identify <u>when</u> the employer was on notice, the court cannot reasonably answer whether the employer's remedial action was "prompt," much less which actions occurred <u>after</u> the employer was on notice.

As such, it is debatable whether that element is met because "an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists under its reasonable procedures." <u>Xerxes Corp.</u>, 639 F.3d at 674 (internal quotation marks omitted). Moreover, the relevant corrective actions are those which occurred after the employer was put on notice as to the harassment, so determining <u>when</u> the County was on notice impacts the second step of this element. <u>See</u> <u>Amirmokri</u>, 60 F.3d at 1130 (noting that liability may be imputed to the employer if the employer had actual or constructive knowledge of the existence of a hostile working environment and took no prompt or adequate remedial action). Curiously, neither party raises this as a concern. As such, the court follows the parties' leads and assumes, without deciding, that the County was on notice of Beckert's harassment of Holland and moves to the second step to consider the County's corrective measures.

### b. Reasonable Remedial Measures

The Court finds that the County took corrective, if ineffective, remedial action such that Holland has not created a jury question on this fourth element. To reiterate, the second prong of the fourth element requires the court to determine whether the employer failed to take prompt remedial action reasonably calculated to end the harassment, <u>Freeman</u>, 750 F.3d at 423, by evaluating whether the employer took "steps reasonably likely to stop the harassment," <u>Chapman</u>, 48 F.4th at 233 (quoting <u>Xerxes Corp.</u>, 639 F.3d at 674). The court will briefly set out the parties' most salient arguments, before turning to Holland's objections to the R&R. The court will then determine whether Holland has met her burden on this element, ultimately finding that she has not.

In its motion for summary judgment, the County noted that, at all relevant times, Beckert was an elected official as defined within S.C. Code Ann. § 4-9-60. ECF No. 115 at 5. The County emphasized that, "[u]nder South Carolina statutory law, county governments are empowered 'to develop personnel system policies and procedures for county employees by which all county employees are regulated except those elected directed by the people.'" Id. (citing S.C. Code Ann. § 4-9-30(7) (emphasis added)). The County went on to specify that Beaufort County operates under a council-administrator form of government. Id. Importantly, "under this statutory system, 'the county administrator shall exercise no authority over any elected officials of the county whose offices were created either by the Constitution or by the general law of the State.'" Id. at 5–6 (quoting S.C. Code Ann. § 4-9-650). As such, neither the County Administrator nor the County Council had authority over the duly elected auditor Beckert under South Carolina law. Id. at 6 (citing S.C. Code Ann. § 4-9-660). In essence, the County argued that Beckert was the only alleged perpetrator of the discriminatory actions and the County had no legal basis of control over the auditor for Title VII purposes—thus, Beckert was not an "employee" of the County since he was an elected official. See id. at 7, 17.

The County then explained that since Beckert was a nonemployee, the court should find that a separate standard applies to determine whether his conduct was imputable to the County. Id. at 17–18. Namely, Beckert's actions could only be imputable to the County if the County failed to take corrective measures within its control once it knew or had reason to know of Beckert's conduct. Id. (citing Kandrac v. Charleston Cnty. Sch. Dist., 2007 WL 9735153, at *13 (D.S.C. Mar. 16, 2007)). Even

24

though Beckert was an elected official and not an employee, the County emphasized that it did everything within its powers—circumscribed as they were by the law—to address Beckert's behavior and job performance. See id. at 6. For example, the County sent complaints to the South Carolina Department of Revenue in 2016. Id. (citing ECF Nos. 115-3; 115-4 at 38:5–22, Sommerville Dep.). In 2018, the County considered changing its form of government to address its limited control over the County Auditor, which it discovered required a referendum of its citizens. Id. at 19. The County urged the court to find that once it had notice of Beckert's conduct, it "attempted to take all corrective measures within its control considering the state statutory limitations." Id. at 18. As such, the County emphasized that Holland had established no genuine issue of material fact as to this fourth element such that Beckert's actions were not imputable to the County under a sexual harassment case brought pursuant to Title VII. Id. at 17–19.

In response, Holland argued that even with a council-administrator form of government, the County could have done more to take corrective measures to end Beckert's harassment. ECF No. 120 at 5–9. Holland emphasized that the County Administrator had operational control of county facilities and premises and similarly could control the obligations of county employees to limit the required contact and communication with a harasser. Id. at 6. She noted that for another similarly situated employee who complained about Beckert, the County removed Beckert's physical access which limited Beckert's access to that employee and the County required Beckert to work from a separate and/or remote location. Id. at 8 & n.5 (first citing ECF No. 120-8, Sommerville Dep. at 23:2–4; and then citing ECF No. 120-6, Kubic Dep. at 58:5–13). Holland claimed that the County exercised control over Beckert only after she had

complained of the conduct on "countless occasions" and ultimately resigned.[13] Id. at 9.

Consequently, Holland concluded that there was sufficient evidence in this case to find

Beckert's conduct imputable to the County, such that summary judgment on the fourth

element of the Title VII claim would be inappropriate. Id. at 18.

The magistrate judge agreed with the County and found that Holland failed to

create a jury question as to whether Beckert's conduct could be imputable to the County.

R&R at 28. Holland objects to that recommendation. ECF No. 138 at 4–7. The court

first notes that Holland previously raised some of her objections in her response in

opposition brief, meaning that the magistrate judge fully considered those arguments and

found them unpersuasive.[14] "General objections that merely reiterate arguments

presented to the magistrate judge lack the specificity required under Rule 72, and have

the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX

Techs., Inc., 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir.

---

[13] As the court noted in the previous footnote, it remains unclear when and if the County had notice of Beckert's harassment of Holland. The parties have not identified a specific date that the County had actual or constructive notice as to his harassment of Holland. Consequently, the court gives little weight to the parties' arguments as to the timeliness of the County's remedial actions because that timeliness is measured relative to the unidentified date it had notice of Beckert's harassment of Holland. Holland resigned on April 20, 2020, but did not email Sommerville to explain the rationale behind her resignation until August 7, 2020. See ECF No. 28-1. Thus, the County clearly had actual notice of Beckert's harassment of Holland in August 2020 at the latest. See id.

[14] For example, in her response in opposition, Holland emphasized that Beckert signed the Beaufort County Personnel Handbook, which purportedly created a contractual relationship that the County could have used to remediate the harassment and/or punish Beckert. ECF No. 120 at 8–9. The magistrate judge addressed and rejected that argument, concluding that South Carolina law prohibited the County from enforcing its personnel policies and procedures against elected officials like Beckert. R&R at 28. Holland then raises that same argument again in her objections saying, "[Beckert's] failure to comply with the Personnel Handbook provides Beaufort County with the authority to initiate remedial action and/or punish Beckert." ECF No. 138 at 6–7.

2012).  A plaintiff who reiterates her previously raised arguments will not be given "the second bite at the apple she seeks;" to permit otherwise would duplicate time and effort and waste judicial resources rather than save them.  Veney v. Astrue, 539 F. Supp. 2d 841, 846 (W.D. Va. 2008).  As such, the court's review is limited to Holland's objections which are specific and particularized in accordance with Fed. R. Civ. P. 72.  See United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007).

The court brackets Holland's objections into two groups.  First, Holland emphasizes that the remedial actions identified by the County were not reasonably calculated to end the harassment.  See ECF No. 138 at 6.  Second, Holland reiterates that the County's failure to act—and its later actions to limit Beckert's harassment—show that the County could have taken additional remedial actions.  See id. at 6–7.  Holland explains that the magistrate judge misunderstood this second argument and now clarifies that her reference to the County's control—evidenced by the County's ability to limit Beckert's access to buildings and employees—shows the control the County could have exerted but did not.[15]  See id.

First, Holland argues that the County's identified remedial actions were not reasonably calculated to end the harassment.  ECF No. 138 at 6.  Namely, Holland argues that complaints to the Governor, SLED, and the Department of Revenue were "checking the box."[16]  Id.  Holland further asserts that a referendum to change the form of

---

[15] To be clear, Holland's objection is itself unclear because it misinterprets the R&R.  ECF No. 138 at 5–7.  As such, the court provides this interpretation which clarifies Holland's objections and puts them in the most favorable light.  See Anderson, 477 U.S. at 249.

[16] The County purportedly sent complaints to SLED after Holland's resignation.  See ECF No. 115-4 at 6, 8.  Additionally, the County reached out to the governor to see if he would remove Beckert from office, though the exact date of that request is unclear.

government was not placed on the ballot once that solution was discovered. <u>Id.</u>
Additionally, Holland emphasizes that the County filed the two lawsuits against Beckert
<u>after</u> Holland resigned such that they cannot be considered relevant remedial action. <u>Id.</u>
In sum, she contends that none of these actions could have ended the harassment and
therefore they were not reasonably likely to stop the harassment.

The court finds that Holland's first objection misses the mark because the
magistrate judge did not rely on the County's "remedial actions" in reaching her
recommendation.[17]  Rather, she recommended the court find no jury question as to the
fourth element because South Carolina law prohibited the County from enforcing its
personnel policies and procedures against elected officials.  R&R at 28–29; <u>see also</u>
<u>Poloschan v. Simon</u>, 2014 WL 1713562, at *2 (D.S.C. Apr. 29, 2014) (noting that under
South Carolina law a county has no authority over the personnel actions of elected
officials or their employees); <u>Amos-Goodwin v. Charleston Cnty. Council</u>, 161 F.3d 1
(4th Cir. 1998) (same).  Relevant to the instant objection, the R&R did not reference the
County's various actions to remove Beckert from office in her final recommendation.
<u>See</u> R&R at 28–29.  Consequently, Holland's first objection is without merit.

Had the magistrate judge based her conclusion on the County's various efforts to
remove Beckert from office, such an analysis would have only reinforced her

---

ECF No. 115-5, Sommerville Dep. at 38:4–39:21.  Consequently, those actions cannot
reasonably be interpreted as likely to stop Beckert's purported harassment of Holland,
because she no longer worked for the County at that time.

[17] Additionally, the court notes that Holland raised some of these arguments in her
response in opposition brief, such that the court need not consider them in full now.  <u>See,</u>
<u>e.g.</u>, ECF No. 120 at 9 (noting that the County exercised control over Beckert only <u>after</u>
Holland had complained of the conduct on "countless occasions" and ultimately
resigned).  However, since the R&R did not explicitly address them, the court considers
them <u>de novo</u> in the interests of completeness.

recommendation. Binding precedent explains that the remedial action need not be effective as a matter of law; rather, it is only must be reasonably calculated to prevent future harassment. Xerxes Corp., 639 F.3d at 670. Had the County's identified remedial actions been effective, the County's multiple attempts to remove Beckert from his position as Auditor were reasonably calculated to stop his harassment of County employees.[18] See id. In other words, if the County were to remove Beckert from his position as Auditor, he would no longer have any right, duty, or ability to impact the employees of the County. Consequently, the County's ultimate failure to remove Beckert from office does not change this court's conclusion that such actions were reasonably calculated to stop Beckert's harassment. As such, the court finds Holland's first objection to be without merit because the magistrate judge did not rely on the remedial

---

[18] In the months after Holland resigned from her position as CFO, the County took increasingly drastic actions to remove Beckert from office. In September 2020 and again in November 2020, Keaveny contacted general counsel for the South Carolina State Law Enforcement Division ("SLED") regarding the issues the County was experiencing with Beckert. See ECF No. 115-4 at 6, 8. Moreover, the County filed two different lawsuits against Beckert in his official capacity. First, in September 2020, the County filed a complaint in mandamus against Beckert in his official capacity which alleged that he breached his ministerial duty by his refusal to invoice property owners for a service change that had been duly and properly enacted. Second, on July 9, 2021, Beaufort County filed another lawsuit against Beckert in his official capacity, alleging that he "has had (and continues to have) a contentious and adversarial relationship with various other officials and employees" of Beaufort County, that this "contentiousness has manifested itself in Defendant Beckert's frequent threats or promises not to do things that state law plainly requires him to do," and that Beckert "has repeatedly sought to usurp the powers of other officials and officers and to avoid fulfilling his legal obligations when they are at odds with his own personal wishes." ECF No. 115-6 at 9–10 ¶¶ 4–6. Finally, at some point in 2020 shortly after Maria Walls filed a lawsuit based on Beckert's alleged harassment of her, County Administrator Ashley Jacobs ("Jacobs"), the County Council, and the County Attorney developed a policy that relocated Beckert to a separate building and that required Beckert to be escorted if he wished to come into the County Administration Building. ECF No. 120-5, Greenway Dep. at 34:3–16. Taken together, these show that the County took the County employees' complaints about Beckert seriously and sought to limit his interactions with those employees.

actions identified by the County, and if it had, its recommendation would have more strongly found that Holland failed to meet her burden on this element.

Second, Holland objects to the magistrate judge's assessment of the County's omissions.  ECF No. 138 at 7.  Namely, Holland focuses on the County's failure to undertake Holland's alternative proposed remedial action to limit Beckert's access to buildings and personnel.  Id.  The R&R examined Holland's reference to the County's failure to limit Beckert's access to buildings and employees and found it unpersuasive because it would not have been reasonably calculated to end his harassment of Holland, since they rarely interacted in person.  R&R at 28–29.  Holland first clarifies that her reference to the County's ability to limit Beckert's access to buildings and employees served to illustrate the County's control over Beckert.  Id.  Thus, Holland explains that the County could have used that control to place other, unspecified, limitations on Beckert's conduct which would have been reasonably calculated to end the harassment. See id. at 6–7.  This argument fails because the limitations are unspecified.  Moreover, the suggestion that the County had some degree of control over Beckert does not, by itself, create a genuine dispute that the County failed to undertake an effective remedial action, particularly when that action is unspecified.

Holland next contends that there was no requirement that discrimination or harassment be in person for it to qualify as harassment, thus challenging the magistrate judge's reference to the fact that only one-fourth of Beckert and Holland's interactions were in person.  Id.  This second objection is perplexing because it appears to agree with the magistrate judge.  See R&R at 28–29.  The magistrate judge essentially concluded that Holland's suggested remedial action—limiting Beckert's access to County

30

buildings—would have had little impact on Beckert's harassment of Holland, because they rarely interacted with each other in person. Id.; see ECF No. 138 at 7. This interpretation is reinforced by the magistrate judge's subsequent reference to evidence before the court which indicated that Holland was invited to attend a monthly meeting with Beckert, County Administrator Jacobs, and some councilmembers. R&R at 28. Holland testified that she never attended and there was no evidence before the court that she was ever punished or reprimanded for her absence. Id. Taken together, the magistrate judge considered Holland's suggested alternative remedial action and found it lacking because it was not reasonably calculated to end the harassment because Beckert managed to harass Holland despite their limited in-person interactions. Id. Thus, the court agrees with both Holland and the R&R that merely limiting access to the building likely would not have been reasonably calculated to end the harassment.

In sum, the court finds that Holland has failed to create a jury question as to whether Beckert's harassment of Holland was imputable to the County. As such, Holland has failed to establish the fourth element of her Title VII claim. Even if the court had not found that Holland failed to create a jury question as to the second element of this claim, her failure to create a jury question as to the fourth element means that the court adopts the R&R and grants summary judgment in favor of the County on this claim.

### B. Equal Protection

Holland alleges that the County and Beckert each violated equal protection under the Fourteenth Amendment. Amend. Compl. ¶¶ 57–63, 101–04. She alleges that the County developed a custom or policy allowing Beckert to harass and intimidate County employees based on their sex in violation of equal protection. Id. ¶¶ 57–63. She further

alleges that Beckert violated equal protection by harassing female County employees, including Holland, based on her sex.  Id. ¶¶ 101–04.  The magistrate judge recommended that the court grant summary judgment as to all of the equal protection claims upon finding that Holland had not created a jury question as to whether the harassment was on the basis of sex.  R&R at 30–33.  Holland objects to that conclusion.  ECF No. 138 at 7–8.  The court first considers the equal protection claim against the County and thereafter considers the claim against Beckert, ultimately adopting the R&R and granting summary judgment for the defendants on both claims.

### 1.  Beaufort County

In the amended complaint, Holland alleges that the County developed a policy or custom to allow Beckert to harass, threaten, intimidate, and bully its employees, which created a hostile work environment permeated with discriminatory intimidation, ridicule and insult, severe enough to alter the conditions of Holland's work environment.  Amend. Compl. ¶ 58.  She further contends that the County's policy or custom deprived her of her right to equal protection guaranteed by the Fourteenth Amendment because of the hostile work environment "fueled by sexual harassment and discrimination."  Id. ¶¶ 62–63.  The R&R noted that courts apply the standards developed in Title VII litigation to equal protection claims under § 1983.  R&R at 31 (citing Brown, 2022 WL 17336572, at *11; Beardsley, 30 F.3d at 529).  Thus, the magistrate judge found that the equal protection claim against the County must also fail where the Title VII claim based on that same harassment is subject to summary judgment.  Id.  In other words, since the magistrate judge concluded that Beckert's hostile conduct towards Holland was not because of her sex in her analysis of Holland's Title VII claim, Holland's equal protection claim based

on the same theory of gender discrimination must also fail.  Id.  Holland does not contest

the magistrate judge's recommendation that the court should grant summary judgment as

to her equal protection claim, beyond the objections the court already considered for her

Title VII claim.  See ECF No. 138 at 7–8 (arguing that her § 1983 claims should not be

dismissed because her Title VII claim "meets the standard to survive summary

judgment").  Consequently, for the same reasons set forth above, the court adopts the

R&R and grants summary judgment as to Holland's equal protection claim against the

County.

### 2.  Beckert

Holland brings a claim against Beckert pursuant to § 1983 where she alleges that

he unlawfully harassed and discriminated against her on the basis of her sex, which

created a hostile work environment in violation of the Fourteenth Amendment.  Amend.

Compl. ¶¶ 102–03.  The magistrate judge concluded that Holland could not establish a

harassment claim under either Title VII or the Fourteenth Amendment's equal protection

clause because she failed to create a jury question as to whether Beckert's conduct was

based on her sex.  R&R at 32.  Moreover, the magistrate judge recommended that the

court find Beckert entitled to qualified immunity in his individual capacity because the

court should find no constitutional violation upon granting summary judgment for the

defendants on all of Holland's federal claims.  Id.  Holland objects to the R&R's

recommendation.  ECF No. 138 at 7–8.  She bases her objection on the same grounds she

presented for her Title VII objections—namely, that she has presented a jury question as

to whether a constitutional violation occurred such that Beckert is not entitled to qualified immunity. Id.

"Qualified immunity 'shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person.'" Lawson v. Union Cnty. Clerk of Ct., 828 F.3d 239, 249 (4th Cir. 2016), as amended (July 8, 2016) (quoting Meyers v. Baltimore Cnty., 713 F.3d 723, 731 (4th Cir. 2013)). The qualified-immunity inquiry proceeds in two steps, which the court may address in whichever sequence "will best facilitate the fair and efficient disposition of [the] case." Halcomb v. Ravenell, 992 F.3d 316, 319 (4th Cir. 2021) (citation omitted). First, the plaintiff must show a violation of a constitutional right. Thompson v. Virginia, 878 F.3d 89, 97 (4th Cir. 2017). Second, "the right at issue must have been 'clearly established' at the time of the defendant's alleged misconduct." Id. (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)).

The court previously concluded that a reasonable jury could not find that Holland has shown a violation of a constitutional right. Specifically, Holland has not established a genuine dispute of material fact as to whether Beckert's harassment was motivated by her gender. Consequently, the court adopts the R&R and grants summary judgment as to Holland's § 1983 claim against Beckert. Further, the court adopts the magistrate judge's recommendation and finds Beckert entitled to qualified immunity in his individual capacity, having found no constitutional violation.

### C.  State Law Claims

Holland brings state law claims for negligence, assumption of a duty, outrage, and defamation under pendent jurisdiction. Amend. Compl. ¶¶ 64–100. The magistrate

34

judge considered judicial economy, convenience, fairness, and comity, ultimately

concluding that the balance of those factors weighed in favor of remand.  R&R at 33–34

(citing <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 & n.7 (1988)).  The parties do

not object to this recommendation.  <u>See</u> ECF Nos. 138, 141, 142.  In the absence of a

timely filed, specific objection, the court reviews the R&R only for clear error.  <u>Diamond</u>,

416 F.3d at 315.  A review of the record for clear error indicates that the R&R accurately

summarized this case and the applicable law.  Accordingly, the court remands the case to

state court for further proceedings.

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS** the R&R and **GRANTS** the

motions for summary judgment as to the federal claims.  The court **REMANDS** the case

to state court for further proceedings.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 6, 2024**
**Charleston, South Carolina**